2021 IL App (2d) 190656-U
No. 2-19-0656
Order filed September 21, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-CF-1079 |
| WILLIAM J. DUGAR JR., | ) ) ) | Honorable Robert A. Wilbrandt Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUDSON delivered the judgment of the court.
Justices McLaren and Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*: The evidence was sufficient to convict defendant of aggravated criminal sexual abuse for touching the victim's vagina with his hand. The trial court properly credited the victim's statements to a child-abuse investigator over her denials at trial that defendant had touched her vagina.

¶ 2    Following a bench trial, defendant, William J. Dugar Jr., was convicted of predatory criminal sexual assault of a child (penis in vagina (count I)) (720 ILCS 5/11-1.40(a)(2) (West 2016) (formerly 720 ILCS 5/12-14.1(a)(1) (West 2008))) and two counts of aggravated criminal sexual abuse (penis on vagina (count II) and hand on vagina (count III)) (720 ILCS 5/11-1.60(c)(1) (West 2016) (formerly 720 ILCS 5/12-16(c)(1) (West 2008))). Count II merged with count I, and

defendant was sentenced to an aggregate term of 13 years, *i.e.*, 8 years on count I and a consecutive term of 5 years on count III. On appeal, defendant argues that the State failed to prove beyond a reasonable doubt that he placed his hand on the victim, A.P.'s, vagina (count III). We disagree. Thus, we affirm.

¶ 3                                  I. BACKGROUND

¶ 4      Count III of the indictment charged defendant as follows:

"That on or about March 1, 2009 to April 30, 2009,*** [defendant], committed the offense of AGGRAVATED CRIMINAL SEXUAL ABUSE, in that *** defendant[,] who was seventeen years of age or older, knowingly committed an act of sexual conduct with A.P., who was under thirteen years of age when the act was committed, in that *** defendant placed his hand on A.P.'s vagina[ ] for the purpose of sexual gratification or arousal of the defendant."

¶ 5      Evidence presented at the bench trial revealed that A.P. has a cognitive disability. Although she turned 16 in February 2017, she acted like a 7-year-old. A.P., who lived with her mother, stepfather, sister, and brother in various parts of McHenry County, knew that defendant was a part of her family, but she was not sure about her relationship to him. Other evidence revealed that defendant is A.P.'s stepbrother, her stepfather's son, and he lived or stayed with the family in McHenry County on occasion.

¶ 6      Around February 13, 2017, Chris P., A.P.'s father, found a news article about defendant that troubled him. Based on that article, Chris P. spoke with A.P. about whether someone had touched her "private parts." A.P. pointed to her pelvic area and told Chris P. that defendant touched her vaginal area. Chris P., a police officer, stopped questioning A.P. because he knew that she needed to undergo a forensic interview. He alerted the police. A.P. was later interviewed

by Anna Krause, the lead forensic interviewer at the Children's Advocacy Center in McHenry County.

¶ 7    The interview between A.P. and Krause was video recorded and admitted at trial. It was clear from the video that A.P. is cognitively impaired, and it was difficult to understand her at times. Krause often repeated what A.P said, and A.P. confirmed whether the repeated statement was accurate. Moreover, although the quality of the recording is good, it was difficult to see A.P.'s small hand gestures precisely.

¶ 8    At the beginning of the video, when Krause asked A.P. about various things, such as her interests outside of school, A.P. was very forthcoming. A.P. was less forthcoming when she talked about defendant touching her. A.P. paused for long periods before answering Krause's questions about the touching and advised Krause at least twice that she did not want to talk about it because it was "disturbing."

¶ 9    During the discussion about defendant touching her, A.P. pointed to her pelvic area and told Krause that defendant touched her on her "privacy." "Privacy" was the term A.P. used to refer to her vagina. A.P. told Krause that defendant touched her "with just his hands." Krause asked A.P. how defendant would touch her, and A.P. replied, "he do [*sic*] with his hands, I don't know." Krause asked A.P. whether defendant touched her with his hand or if she was not sure. A.P. said she was not sure. Then, unprompted, A.P. appeared to reflect on what she had said and stated, "I think with just his hands."

¶ 10    On anatomically correct drawings, A.P. indicated that defendant touched her vagina with his penis. However, A.P. did not indicate on the drawing that defendant touched her vagina with his hand. Using anatomically correct dolls, A.P. showed Krause how defendant "kind of rubbed

like this."[1] While making this statement, it appeared that A.P. pulled back the doll's underwear and, perhaps, very briefly touched the vagina on the doll.

¶ 11    A.P. also told Krause that Chris. P. asked her whether defendant had touched her. A.P. "kept telling" Chris P. that defendant had touched her, and she pointed to her pelvic area, indicating that this was the area where she was touched.

¶ 12    A.P. testified at trial. Although she remembered talking to Chris P. and Krause about defendant touching her, she either denied that defendant ever touched her or said that she was not sure. A.P. also testified that she has known defendant for a long time and did not want to get defendant in trouble. Further, A.P. stated that she spoke to her stepfather before she testified. They talked about defendant touching her, but her stepfather did not "tell [her] that [she was] not sure about who touched [her] on [her] privacy."

¶ 13    Polo Fabian, the victim witness coordinator for the State, testified that Victoria D., A.P.'s mother, refused to allow the State to talk with A.P. Victoria D. testified, however, that she never prevented the State from talking with A.P. before trial.

¶ 14    J.W., defendant's cousin, testified that defendant touched her vagina with his hand when she was seven or eight years old. J.W. stated that the abuse stopped in 2010.

¶ 15    After the State rested, defendant moved for a directed finding. The trial court denied the motion, finding, among other things, that A.P. said to Krause that defendant touched her and "[she thought] he did it with his hands." That evidence, the court found, "gets us past count 3."

¶ 16    Defendant's case consisted of family members testifying to his good character and the fact that they never saw him engage in any sexual activities with A.P.

---

[1] It is also possible that A.P. said defendant "kind of rolled like this."

¶ 17    The trial court found defendant guilty of all three counts. The court noted that A.P.'s testimony was "certainly different" from the interview she had with Krause. Nevertheless, the court believed what A.P. told Krause was the truth. The court also found that the video showed that defendant had touched A.P.'s vagina with his hand.

¶ 18    Defendant was sentenced, and this timely appeal followed.

¶ 19                                    II. ANALYSIS

¶ 20    At issue in this appeal is whether defendant was proved guilty beyond a reasonable doubt. A defendant's conviction will be set aside only if the evidence against him is so improbable or unsatisfactory that it creates a reasonable doubt of his guilt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). The relevant question for us is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

¶ 21    Defendant argues that the State failed to prove him guilty beyond a reasonable doubt of aggravated criminal sexual abuse as charged in count III. To prove defendant guilty of aggravated criminal sexual abuse, the State had to establish beyond a reasonable doubt that defendant was "17 years of age or over and *** commit[ed] an act of sexual conduct with [A.P.,] a victim who [wa]s under 13 years of age." 720 ILCS 5/11-1.60(c)(1) (West 2016). Defendant takes issue with whether he "commit[ed] an act of sexual conduct with [A.P.]" *Id.* As relevant here, " '[s]exual conduct' means any knowing touching or fondling by *** the [defendant] *** of the sex organs *** of the victim[ ] for the purpose of sexual gratification or arousal of *** the [defendant]." *Id.* § 11-0.1. The "sexual conduct" charged in count III was that defendant touched A.P.'s vagina with his hand.

¶ 22    In arguing that he was not proved guilty of touching A.P.'s vagina with his hand, defendant recognizes that the trial court relied on the interview between Krause and A.P.  Defendant contends that "A.P.'s statements to [Krause] were so vague and uncertain as to be wholly insufficient to prove him guilty beyond a reasonable doubt."  Defendant then claims that "[A.P.'s] statements were further muddied at trial, when the State asked her point blank if anyone had ever touched her on her vagina and she said 'no.' "

¶ 23    Viewing the evidence in a light most favorable to the State, we determine that defendant was proved guilty beyond a reasonable doubt of touching A.P.'s vagina with his hand.  During the interview with Krause, A.P. told Krause more than once that defendant touched her vagina with his hand.  These statements can serve as the sole basis for finding defendant guilty.  See *People v. Mister*, 2015 IL App (4th) 130180-B, ¶ 104 (testimony of a single witness, if positive and credible, is sufficient to convict a defendant).  Although A.P. would sometimes follow up her assertions during the interview with a statement that she was unsure whether defendant touched her with his hand, the trial court was free to reject those statements.  "The trier of fact is free to accept or reject as much or as little of a witness's testimony as it pleases."  (Internal quotation marks omitted.) *People v. Peoples*, 2015 IL App (1st) 121717, ¶ 67.

¶ 24    Although it is true that A.P.'s trial testimony differed from what she told Krause, the trial court heard several things that could have affected A.P.'s trial testimony.  Specifically, the evidence revealed that A.P. cared a great deal about defendant; she did not want to get defendant in trouble; the State was denied the opportunity to speak with A.P. before trial; and A.P.'s stepfather spoke to her before trial about defendant touching her.  After considering all the evidence, the trial court credited A.P.'s statements to Krause over her trial testimony.  Resolving conflicts in the evidence and weighing any inconsistencies is within the province of the trial court.

*People v. Hernandez*, 319 Ill. App. 3d 520, 533 (2001); *People v. Hruza*, 312 Ill. App. 3d 319, 325 (2000). We will not reassess the trial court's decision to credit A.P.'s statements in the video-recorded interview over her trial testimony.

¶ 25    The trial court watched the interview, including the portions where A.P., upon reflection, stated that defendant touched her with his hands and where A.P. showed Krause how defendant rubbed her vagina with his hand (at least, that is how her gesture must be interpreted when viewed in the light most favorable to the State). The court also heard A.P.'s reluctance to talk to Krause about what transpired between her and defendant because it was "disturbing." Moreover, the court heard other evidence corroborating A.P.'s allegation that defendant touched her with his hand. Chris P. testified that A.P. told him that defendant touched her vaginal area, and more to the point, J.W. described interactions she had with defendant that were like A.P.'s. The trial court, which assessed all the evidence, chose to credit A.P.'s statement that defendant touched her vagina with his hand over the contrary evidence. We will not reassess A.P.'s credibility or reweigh the evidence, as it is not our function to retry defendant. *People v. Patterson*, 314 Ill. App. 3d 962, 969 (2000). Viewing all the evidence in a light most favorable to the State, which we must do, we determine that defendant was proved guilty beyond a reasonable doubt of touching A.P.'s vagina with his hand.

¶ 26    Defendant argues, however, that "this [case] is not about credibility." Rather, he claims that, like *People v. Maggette*, 195 Ill. 2d 336 (2001), and *People v. Guerrero*, 2018 IL App (2d) 160920, this case concerns a "witness who simply never testified with any reliability that the allegations involving [defendant's] hand happened." We disagree.

¶ 27    At issue in both *Maggette* and *Guerrero* was whether there was evidence that the defendant sexually penetrated the victim. *Maggette*, 195 Ill. 2d at 342, 346 352; *Guerrero*, 2018 IL App (2d)

160920, ¶¶ 8, 12-13, 49-50, 58. In *Maggette*, our supreme court concluded that the victim's testimony that the defendant " 'felt underneath [her] panties and in [her] vagina area' " was insufficient to establish that the defendant penetrated the victim. (Emphasis omitted.) *Maggette*, 195 Ill. 2d at 352. Similarly, we determined in *Guerrero* that the victim's testimony, wherein she denied that the defendant's fingers penetrated her vagina, was insufficient to establish penetration. *Guerrero*, 2018 IL App 160920, ¶¶ 47, 50, 54. In contrast to these cases, the issue here is not whether evidence was presented that defendant touched A.P.'s vagina with his hand, but rather how to assess A.P.'s statements to Krause that defendant touched her vagina with his hand in light of her denials and her statements that she was unsure about whether that touching occurred. On this point, the trial court had to determine which evidence was more credible. The court found, as noted above, that A.P.'s statements to Krause that defendant had touched her vagina with his hand, together with her demonstrations with the dolls, was to be credited over her statements of uncertainty and her denials.

¶ 28     In reaching our conclusion that defendant was proved guilty of count III beyond a reasonable doubt, we need not address defendant's argument that the State's comment in closing argument (that A.P. never said she was not touched) compounded the problem of lack of proof, as the State's comments in *Guerrero* were held to have done (*Guerrero*, 2018 IL App 160920, ¶¶ 55-58). Putting aside the fact that, unlike in *Guerrero*, the evidence was sufficient to prove defendant's guilt beyond a reasonable doubt, defendant was convicted following a bench, not a jury, trial. Thus, the concerns in *Guerrero* (*id.*) about the impact of the improper statements are not present here (*People v. Brown*, 243 Ill. App. 3d 1057, 1066 (1993) ("This was a bench trial, and the trial judge is presumed to disregard incompetent [statements made in closing argument] presented to him.")).

¶ 29    Moreover, we would be remiss if we did not comment on the State's suggestion that, because defendant did not challenge his convictions of counts I and II, "defendant acknowledges that he sexually assaulted and abused A.P. [as charged in counts I and II]," and thus, he cannot impeach A.P.'s testimony and argue that he was not proved guilty beyond a reasonable doubt of count III.  Among other things, as defendant notes in his reply brief, the fact that he believes that he cannot raise a good-faith-reasonable-doubt challenge as to counts I and II "is not equivalent to [defendant] admitting guilt on Counts I and II," which defendant has never done.

¶ 30                                III. CONCLUSION

¶ 31    For the reasons stated, we affirm the judgment of the circuit court of McHenry County.

¶ 32    Affirmed.